Jonathan B. Cook, Appellant, v. Edward P. Lauten, Appellee.

Gen. No. 46,064.

Opinion filed January 20, 1954. Released for publication February 25, 1954.

BERTRAM A. STONE, of Chicago, for appellant.

HALFPENNY & HAHN, and MOSES, BACHRACH & KENNEDY, all of Chicago, for appellee; WILLIAM C. WINES, of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Plaintiff filed a complaint in chancery praying for an accounting and damages resulting from an alleged breach of partnership agreement, a temporary injunction, and for general relief. The cause was referred to a master and in conformity with the findings and recommendations in his report a decree was entered. Plaintiff appeals.

In a former appeal, *Cook v. Lauten*, 335 Ill. App. 92, this court reversed a decree for a temporary injunction. The decree here appealed from fixed the damages sus-

tained by defendant as a result of the improvident issuance of a temporary injunction and dismissed the cause for want of equity.

Plaintiff, a certified public accountant, employed defendant in 1924. In 1928, when defendant became qualified as a certified public accountant, the plaintiff prepared the first of a series of written instruments purporting to establish the relationship of the parties and other conditions. The legal effect and validity of some of these instruments have been challenged by defendant. We shall pass this question for the moment.

In the latter part of 1937 one Trimarco was employed by the firm at a weekly salary of fifty dollars without participation in profits and, according to defendant's testimony, as of December 1, 1937 Trimarco, plaintiff, and defendant formed a partnership. In March 1942 Trimarco left the firm and thereafter plaintiff and defendant continued to conduct the firm's business as a partnership until November 19, 1946 when defendant established quarters elsewhere, in the office of one of the clients of the former partnership. Several days before the dissolution of the partnership, defendant, without the knowledge and consent of plaintiff, clandestinely removed most of the files, records and equipment of the firm to defendant's new quarters and, according to the allegations of the complaint, some of the secretaries and accountants employed by the firm were induced by defendant to leave the firm and were thereafter employed by him.

The master found, in substance, that the relationship of employer and employee existed between the plaintiff and defendant prior to 1937 and that thereafter they were partners until the dissolution of the firm in 1946; that the good will of the partnership belongs equally to both partners and therefore neither party may claim damages from the other by virtue of losing any good will; that the equipment, such as adding machines,

257

typewriters, etc., taken from the offices of the firm was returned to plaintiff a few months after the dissolution of the partnership; that there was no evidence offered by the plaintiff tending to prove damages, if any, resulting from the use of the equipment of the partnership; that there was not sufficient proof to establish that defendant actually induced employees to leave the firm and become associated with him; and that there was no proof of any damage which may have been sustained by plaintiff because of the loss of said employees.

Finally the master concluded that the plaintiff has failed to sustain the material allegations of the complaint and hence is not entitled to the relief prayed.

Plaintiff contends that a partnership was formed by virtue of the first agreement executed by the parties on March 10, 1928 and continued without change until November 19, 1946. In this instrument, titled "agreement for junior partnership," plaintiff and defendant are designated as "managing partner" and "junior copartner," respectively, of Jonathan B. Cook & Company. It empowers the plaintiff to add to or change the personnel of the so-called "partnership" by the addition of other "junior partners," or direct their withdrawal at his own discretion, and states that the "managing partner" shall be the sole owner of the assets and good will of the firm. It also provides for a fixed annual salary and bonus as compensation for the defendant, and, at the discretion of plaintiff, defendant is permitted to advance specified amounts to be used in the firm's business. Such advances, however, were to be treated as loans to the firm, and the repayment thereof as the individual obligation of the "managing partner." In case of the death of defendant the agreement was to terminate and defendant's estate be entitled only to unpaid earned salary and bonus. In the event of death of the plaintiff "his executors or trustee

258

or administrator shall continue the agreement" with the other junior partners, if any.

██ ██ In our former opinion, 335 Ill. App. 92, we said, at page 97: "Defendant cannot be an employee and a copartner of plaintiff at the same time in the same business, since a partner is a co-owner. (*Lindley v. Murphy*, 387 Ill. 506.) A partnership is a contract of mutual agency, each partner acting as a principal in his own behalf and as agent for his copartner (*Schumann-Heink v. Folsom*, 328 Ill. 321) and each partner is possessed of a joint interest in the whole but does not own any separate part of the partnership property (*Swirsky v. Horwich*, 382 Ill. 468)."

██ Defendant says that the agreement for a "junior partnership" negatives every one of the elements essential to constitute a partnership relation. We agree. Defendant's salary is fixed regardless of profits or losses of the alleged partnership and plaintiff as managing partner may by unilateral action alter defendant's share of the profit at will. Upon the death of defendant he is only entitled to unpaid salary and a bonus computed for the calendar month preceding his death. In short, defendant was to have no interest in the so-called "partnership" except his unpaid salary and one month's bonus.

██ Another instrument prepared by plaintiff and executed by defendant in 1933, titled "personal good faith," provided among other things that for a period of five years after the termination of "my said employment" defendant would not become engaged in any public accounting business conducted at any place within seventy-five miles of the location of any office "of my employer." The acknowledgment of the notary public of the defendant's signature in this instrument certifies that defendant "is personally known to me and known to me to be an employee . . . of Jonathan

259

B. Cook." Repeated use in this instrument of the terms "employee," "employer," and "employment," tends in our view to prove that the parties did not intend to create a partnership relation by the former instrument in 1928. Moreover, the plaintiff admitted that in an answer filed in certain proceedings in the Municipal Court of Chicago, No. 4016270, he denied that the firm of Jonathan B. Cook & Company was a partnership and averred that from November 20, 1926 to May 22, 1937 he was at that time the sole proprietor. We think there is ample evidence to support the master's finding that the relationship of employer and employee existed between the parties until 1937 and that thereafter they were partners until the dissolution of the partnership in 1946.

The parties have stipulated that there was a settlement of accounts between them for the period prior to November 1946.

Plaintiff contends, however, that he is entitled to an accounting and damages for the wrongful appropriation of the good will of the business by the defendant. In support of his contention plaintiff relies on *Whitman v. Jones*, 322 Mass. 340, *Hutchins v. Page*, 204 Mass. 284, and other cases in foreign jurisdictions involving commercial partnerships.

The work of certified public accountants requires skill, learning, and experience. It is professional in its character, and in the instant case the parties themselves so regarded their calling. The general rule is that a professional partnership, the reputation of which depends on the individual skill of the members, such as partnerships of attorneys or physicians, has no good will to be distributed as a firm asset on its dissolution. (40 Am. Jur., § 27, p. 316.) See 44 A. L. R., p. 524. In *Douthart v. Logan*, 86 Ill. App. 294, affirmed in 190 Ill. 243, this court held in effect that no good will exists except in cases of commercial or trade part-

nerships, and, adverting to Bates on Partnership, the court said, at page 311: "Good will is not strictly applicable to a professional partnership, for its business has no local existence, but is entirely personal, consisting in a confidence in the integrity and ability of the individual." To the same effect see *Acme Harvester Co. v. Craver,* 110 Ill. App. 413, affirmed in 209 Ill. 483. Under the authorities last cited we are impelled to hold that the partnership here in question, upon its dissolution, has no good will to be accounted for as an asset, especially where, as here, there is no provision in the partnership agreement relating to good will as an asset.

From an examination of the record, consisting of more than fifteen hundred pages, we are of the opinion that the evidence is sufficient to support the master's findings and that the decree based on these findings is proper. The other questions argued by the defendant but not discussed in this opinion have not been overlooked. We find nothing in them that requires discussion.

For the reasons given, the decree is affirmed.

*Decree affirmed.*

FEINBERG, P. J. and KILEY, J., concur.