WILLIAM L. KOESTNER, Plaintiff-Appellant, *v.* WEASE & KOESTNER JEWELERS, INC., Defendant-Appellee.—WILLIAM E. WEASE, Plaintiff-Appellee, *v.* WILLIAM L. KOESTNER, Defendant-Appellant.

Third District   No. 77-470

Opinion filed August 7, 1978.—Rehearing denied October 17, 1978.

Daniel W. Hardy, of Clem, Hardy & Triggs, of Peoria, for appellant.

Robert D. Jackson, of Westervelt, Johnson, Nicoll & Keller, of Peoria, for appellee.

Mr. PRESIDING JUSTICE STENGEL delivered the opinion of the court:

This appeal arises from two separate cases which were consolidated for bench trial in the Circuit Court of Peoria County. In the first action William Koestner, alleging breach of an oral employment contract and *quantum meruit*, sought to recover $3,400 from Wease and Koestner Jewelers, Inc. In the second action William Wease sought to recover

$1,091 from Koestner for breach of contract. The trial court ruled against Koestner in both cases, and he appeals.

In the latter part of 1974 William Wease and William Koestner, both of whom were experienced in the jewelry business, began discussing the idea of opening a jewelry store together. Testimony indicated the parties wished to enter some type of business relationship which would allow a 50/50 division of profits, losses and work. Several possible arrangements were considered, but the men finally agreed on a corporate form with the corporate stock to be evenly divided between themselves. However, an accountant suggested that a tax advantage for Wease could be derived if he (Wease) originally purchased all of the stock issued by the business. The parties agreed that Wease would initially purchase all of the stock, and Koestner would hold a 6-month option to purchase one-half of the stock. Thus, Wease became the sole shareholder in Wease and Koestner Jewelers, Inc., buying 10,000 shares of stock for $10,000. The money used by Wease to pay for the stock was loaned to him by Koestner in exchange for Wease's one-year non-interest-bearing note.

Wease and Koestner Jewelers, Inc., commenced operations in January 1975, with Wease as president of the corporation and Koestner vice president. The parties agreed that each of them would devote full-time to the business and each would receive $1,200 monthly from the corporation's profits. Both men did work full time; however, the expected profits were not realized, and both men were forced to take smaller monthly amounts from the business. The relationship continued through May 1975, with each man receiving a total of $2,600 from the corporation. On May 30, 1975, Koestner terminated his involvement with the business. He had not exercised his option to purchase stock, and at no time was he a shareholder in the corporation. A financial statement was prepared indicating that from January through May 1975, the corporation had a net operating loss of $2,182.98.

At trial Koestner claimed that from January to May, 1975, he was an employee of the corporation entitled to receive $3,400 as the unpaid portion of the $1,200 monthly "salary" he was promised or as the reasonable value of his services under a theory of *quantum meruit*. Moreover, he contended he could not be held individually liable for the operating losses of the separate corporate entity, of which he was not even a shareholder. Wease, on the other hand, argued that he and Koestner agreed to operate the jewelry store on a 50/50 basis and, notwithstanding the corporate form of the business, the rights and liabilities between the two parties should be determined on that basis. Wease claimed Koestner was not an employee of the corporation entitled to a "salary," but rather a partner entitled to one-half of the business' profits and liable for one-half of the business' losses. The trial court agreed

with Wease, denying Koestner's claim for salary and holding Koestner personally liable for one-half of the net operating losses incurred by the corporation from January through May, 1975. On appeal Koestner attacks the evidentiary sufficiency and the legal correctness of the trial court's judgments.

■■ Koestner first claims the evidence was insufficient to support the trial court's conclusion that he and Wease agreed to operate Wease and Koestner Jewelers, Inc., on a 50/50 basis. We do not agree. Whether an agreement was concluded between the parties was a question of fact to be decided by the trial court and that decision will not be disturbed on review unless manifestly against the weight of the evidence. *Russell v. Klein* (1st Dist. 1975), 33 Ill. App. 3d 1005, 339 N.E.2d 510; *Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375.

The totality of the relationship between the two men and the corporation supports the trial court's conclusion that the parties in this case intended to operate their jewelry business on a 50/50 basis notwithstanding its corporate form. In late 1974 Wease and Koestner conducted extensive discussions with the avowed purpose of "going into business together." Both men participated in the planning of the corporation, and both were officers of the corporation. Each man individually signed the lease for the business premises, and each was authorized to sign deeds for the corporation. Wease testified, "The agreement was 50/50 right from the start," and Vic Barber, an accountant who participated in the planning of the corporation, supported Wease's claim. Moreover, the evidence indicates the business' corporate form and the fact Wease initially held all of the corporate stock was an attempt by the parties to insulate their personal property from corporate creditors and to achieve tax advantages rather than a means of defining the legal relationship between them. The arrangement between the two men and the corporation clearly evinces something more than a mere employee-employer relationship. The trial court properly concluded that Wease and Koestner agreed and intended to operate Wease and Koestner Jewelers, Inc., on a 50/50 basis.

Koestner's second claim is that, regardless of the parties' intent, it was legally impermissible for the trial court to ignore the corporate form of the business and to determine the rights and liabilities of the parties as though they were partners or joint adventurers. As discussed above, the trial court concluded, and we agree, that the parties intended to operate the business on a 50/50 basis notwithstanding the business' corporate form or the fact Wease was the sole shareholder. It is clear to us that the parties chose the corporate form solely as a convenient medium for carrying out the purposes of their partnership or joint venture. Thus, the essential question is: What effect does incorporation of the business have

on the rights and liabilities between parties to a partnership or joint adventure? This precise question has not been decided by an Illinois court, and we must look to the decisions of foreign jurisdictions for guidance.

The older rule, which is supportive of Koestner's position, is well stated in *Jackson v. Hooper* (1910), 76 N.J. Eq. 592, 75 A. 568, 27 L.R.A. (N.S.) 658. In that case the court, confronted with the question of the relationship between a joint venture and a corporation, ruled that a joint venture could not be carried on by individuals through a corporate form and stated that where parties "adopt the corporate form with the corporate shield extended over them to protect them against personal liability, they cease to be partners and have only the rights, duties and obligations of stockholders. They cannot be partners *inter sese* and a corporation as to the rest of the world." *Jackson v. Hooper* (1910), 76 N.J. Eq. 592, 598-99, 75 A. 568, 571.

If the rule of *Jackson v. Hooper* is adopted, it is clear that the trial court here erred in determining the rights and liabilities of Wease and Koestner as though they were partners or joint adventurers. However, the highly formalistic ruling of *Jackson* has come under heavy attack and has been rejected by many jurisdictions. An emphasis on substance over form has led numerous courts to conclude that, "There is little logical reason why individuals cannot be partners *inter sese* and a corporation as to the rest of the world, so long as the rights of third parties such as creditors are not involved." (*Arditi v. Dubitzky* (2d Cir. 1965), 354 F.2d 483, 486; *Elsbach v. Mulligan* (1943), 58 Cal. App. 2d 354, 136 P.2d 651; *DeBoy v. Harris* (1955), 207 Md. 212, 113 A.2d 903; *Mendelsohn v. Leather Manufacturing Corp.* (1950), 326 Mass. 226, 93 N.E.2d 537.) In each of these cases the court found the corporation to be a mere agency for convenience in carrying out the joint venture or partnership. The courts ruled that for the purposes of determining the rights and liabilities of the parties, it was proper to place the parties in the position they would have occupied had the corporate form not been adopted. The corporate form was not allowed to preclude recovery by one party from the other if justice so required and no innocent third parties were thereby injured.

■■ In light of these decisions we believe it was proper for the trial court to determine the rights and liabilities between Koestner and Wease as though they were partners or joint adventurers. The parties intended the business to be run on a 50/50 basis notwithstanding its incorporation. The corporate form was used merely as a medium for carrying out the partnership purposes; it was not intended as a means of defining the legal relationship between the parties. No creditors or other third parties will be injured by the trial court's decision. Moreover, Illinois courts have long held that substance and not form should be the controlling criterion

in determining the nature of a business relationship. (*Baker Farmers Co. v. ASF Corp.* (3d Dist. 1975), 28 Ill. App. 3d 393, 328 N.E.2d 369; *Reese v. Melahn* (1973), 53 Ill. 2d 508, 292 N.E.2d 375; *Ditis v. Ahlvin Construction Co.* (1951), 408 Ill. 416, 97 N.E.2d 244.) We agree with the trial court that Koestner was a partner or joint adventurer with Wease in Wease and Koestner Jewelers, Inc. As such he was not entitled to a salary as an employee and was liable to Wease for one-half of the business' losses during the period January through May 1975.

■■ The third claim raised by Koestner is that a statement made by Wease constituted a release of Koestner from all liabilities of the business. Koestner did not plead release as an affirmative defense as required by section 43 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 43), but the issue was raised by the evidence and in Koestner's post-trial motion. (Ill. Rev. Stat. 1975, ch. 110, par. 43.) We believe the issue was properly before the trial court; nevertheless, we must refuse to disturb the trial court's determination that a release was not proven. Whether there was an agreement between the parties releasing Koestner from liability for the business' losses was a question of fact for the trial court. (*Affiliated Realty & Mortgage Co. v. Jursich* (1st Dist. 1974), 17 Ill. App. 3d 146, 308 N.E.2d 118.) We note that the only evidence of a release in this case was presented in the direct testimony of Wease which is before this court in the form of a proposed report of proceedings, rather than in a verbatim transcript. The verbatim record of that part of the trial was lost as a result of a tape recorder malfunction. Although this unfortunate circumstance is the fault of no one, it does require us to give even greater deference to the judgment of the trial judge who viewed the witnesses, heard their testimony and was in a far better position than this court to determine the meaning of the witness' statements. We are not convinced that the trial court's determination was erroneous.

Finally, Koestner claims there was insufficient evidence presented to prove the business losses alleged by Wease in his complaint. Again we must defer to the trial court's determination of this factual issue. Both Wease and the business' accountant, Vic Barber, testified to the losses sustained by the business and the manner in which those losses were calculated. We believe there was sufficient evidence to sustain the trial court's conclusion that the business suffered losses for which Koestner should be held liable and that those losses were calculated by proper accounting procedures.

The judgment of the Circuit Court of Peoria County is affirmed.

Affirmed.

STOUDER and SCOTT, JJ., concur.